IN THE
UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION


FILED ISG
US DISTRICT COURT CLERK
WESTERN DISTRICT OF KY
07 FEB 26 PM 1: 13

JAMES CARL HIGGS
EASTERN KENTUCKY CORRECTIONAL COMPLEX
200 ROAD TO JUSTICE
WEST LIBERTY, KENTUCKY   41472
                                        PLAINTIFF

V.                                      NO. 3:06-CV-P453-H


TRANSPORTS SPECIALIST STANFORD
TRANSPORTS CORPORATION OF AMERICA
1715 YANKEE DOODLE ROAD
EAGAN, MINNESOTA   55121

CPL STEPHANIE WHITE
TRANSPORTS CORPORATION OF AMERICA
1715 YANKEE DOODLE ROAD
EAGAN, MINNESOTA   55121

SERGEANT MATT DELUGA, DEPUTY
CHRISTIAN COUNTY JAIL
410 WEST 7TH STREET
HOPKINSVILLE, KENTUCKY   42240

MIKE GRISE, DEPUTY
CHRISTIAN COUNTY JAIL
410 WEST 7TH STREET
HOPKINSVILLE, KENTUCKY 42240

KLYE BRUCE, DEPUTY
CHRISTIAN COUNTY JAIL
410 WEST 7TH STREET
HOPKINSVILLE, KENTUCKY 42240

ADAM TURNER, DEPUTY
CHRISTIAN COUNTY JAIL
410 WEST 7th STREET
HOPKINSVILLE, KENTUCKY   42240

BRIAN GLOVER, DEPUTY
CHRISTIAN COUNTY JAIL
410 WEST 7TH STREET
HOPKINSVILLE, KENTUCKY   42240

ED PUCKETT, ADMINISTRATOR
ROEDERER CORRECTIONAL COMPLEX
P.O. BOX 69
LA GRANGE, KENTUCKY   40032

ED CAMPBELL, DEPUTY
CHRISTIAN COUNTY JAIL
410 WEST 7TH STREET
HOPKINSVILLE, KENTUCKY   42240

CHRIST DIEDRICH, DEPUTY
CHRISTIAN COUNTY JAIL
410 WEST 7TH STREET
HOPKINSVLLE, KENTUCKY   42240

JESSICA DURETT, ADMINISTRATOR
ROEDERER CORRECTIONAL COMPLEX
P.O. BOX 69
LA GRANGE‖ KENTUCKY   40032

LISA _____, NURSE
ROEDERER CORRECTIONAL COMPLEX
P.O. BOX 69
LA GRANGE, KENTUCKY 40032

KENTUCKY PAROLE BOARD
P.O. BOX 2400
FRANKFORT, KENTUCKY   40602-2400

CAPTAIN _____ WATERS
WABASH VALLEY CORRECTIONAL COMPLEX
P.O. BOX 2222
CARLISLE‖ INDIANA   47838

INDIANA DEPARTMENT OF CORRECTIONS
INDIANA GOVERNMENT CENTER SOUTH
302 WEST WASHINGTON, STREET
FIFTH FLOOR
INDIANAPOLIS, INDIANA   46204

TASER INTERNATIONAL, INC
_____, ARIZONA

DEFENDANTS

[And All Other Unknown Individuals]


I.   AMENDED AND/OR SUPPLEMENTAL COMPLAINT

1.      Plaintiff, James Carl Higgs, hereby sumit this Amended
and/or Supplemental Complaint pursuant to Rule 15, Federal Rules
of Civil Procedures.

II.   JURISDICTION

2.      The United States District Court has jurisdiction under
Article III, of the Constitution of the United States.

[2 of 11]

3.      Additional jurisdiction is conferred upon this court by virtue of Title 42, U.S.C.Sections 1983, 1985, and 1986. Also, known as the Ky Klux Klan Act of 1871.

4.      Title 28, U.S.C. Sctions 1331, 1343, 2201, 2202, and 1915 gives the U.S. District Court authority to issue injunctive relief and declaratory judgment. See also, Rule 65, FRCVP.

## III. PARTIES

5.      Plaintiff, James Carl Higgs, at all times dispositive of the claims averred herein, a prisoner confined and restrained by the defendants.  While in the defendants' custody and control, plaintiff was assaulted and battered by the defendants due to the use of unnecessary and excessive force. As a direct and proximate result of the physical force, plaintiff experienced excuriating pain, mental and emotional distress.

6.      Defendant Sanford is and all times pertinent to a fair and adequate disposition of this complaint, employed by the Transports Corporation of America [TCA] as a Transports Specialist. While acting as a agent of TCA and the Kentucky Parole Board, Sanford used excessive and unreasonable force causing plaintiff to suffer physical pain and fear.

7.      Defendant Stephanie White is at all times mentioned herein, employed as a Transports Specialist by the Transports Corporation of Americal.

8.      Defendant Matt Deluga, is at all relevant times averred herein, emplyed by the Christian County Jail as a Deputy. And as such, is liable for violating plaintiff's right under the Eighth and Fourteenth Amendments to the U.S. Constitution.

[3 of 11]

9.      Defendant Mike Grise, is and at all times mentioned herein, employed as a Deputy, Christian County Jail, Hopkinsville, Kentucky.  And as such, subjected plaintiff to cruel and unusual punishment and denied plaintiff due process of law and the equal protection of the law in violation of the Eighth and Fourteenth Amendments to the Constitution of the United States.

10.     Defendant Klye Bruce, Deputy, is and at all times mentioned herein, employed as a deputy for the Christian County Jail.  And as such, had a duty to treat plaintiff fairly.

11.     Defendant, Adam Turner, is, and at all times referred to in this complaint, an employee of the Christian County Jail and holds the rank of Deuputy.

12.     Defendant, Brian Glover, is and at all times pertinent, employed as a Deputy, Christian County Jail. While acting as a Deputy, defendant Glover used excessive force which resulted in plaintiff experieincing excuriating pain and mental anguish and emotional distress.

13.     Defendant Ed Campbell, is employed by the Christian County Jail as a Deputy.  As as such, is responsible for the safety of all prisoners trusted to his care.

14.  Defendant, Chris Diedrich, is exployed by the Christian County Jail as a deputy.

15.     Defendant, Ed Puckett, is and all times mentioned herein, employed as an Administrator, Roederer Correctional Complex, La Grange, Kentucky.  And as such, is responsible for the classification, operation and management of prisoners.

16.     Defendant, Jessica Durrett, is employed as an Administrator for the Roederer Correctional Complex, La Grange, Kentucky.

[4 of 11]

17.     Defendant, Lisa _____, is and at all times relating to the incidents herein, employed as a nurse, Roederer Correctional Complex, LaGrange, Kentucky.

18.     Defendant, Kentucky Parole Board, issued a warrant for plaintiff's arrest for violation of parole.  The warrant was executed by the Transportation Corporation of America (hereinafter TransCor).

19.     Defendant, _____ Waters is and at all times averred hereto, employed as a Corrections Official with the rank of Captain.

20. Defendant, Taser International, Incorporation (hereinafter Taser) is the manufacture of Taser guns used by defendants. Taser is headquater in Arizona.

## IV. FACTS

21.     On Friday, 11 August 2006, I was released from the Indiana Department of Corrections (IDOC), Wabash Valley Correctional Complex [hereinafter WABASH], Carlisle, Indiana to the custody of TransCor.

22.     A warrant for my arrest was issued by the Kentucky Parole Board [hereinafter Board] on 29 June 1999. At the time, I was facing multiple criminal charges in the Harrison Superior Court, Corydon, Indiana. I received an eight (8) year sentence for which I served 7½ years in the IDOC.

23.     TransCor acted as agent of the Board when I was released to their custody. The journey from the IDOC to the Kentucky Department of Corrections [hereinafter KDOC] took four [4] days. Even though the distance was only 300 miles.

[5 of 11]

24.     The reason for the delay was due to TransCor's arrange-
ments with various state jails and prisons to pick up and drop
off prisoners.  Some of the prisoners had been in transit for
weeks.

25.     Shortly after I was seated on the transportation bus, I
was assaulted TransCor Specialists [hereinafter Specialists] In
particular, Specialist Sanfort.

26.     As I was being escorted to the rest room, Stanford stated:
"you are in my face " and commenced spraying some kind of chemical
in my face. In quick sucession, Sanford hit me in the face with
either his fist or forearm. The force from the blow and the chemicals
caused me to fall backwards and to lose my balance. Also, the
specialist that was escorting me from the water to the rest room
became entwined with me. We fell to the floor and Sanford piled
on.  Sanford miscalculated causing some of the chemicals to get
on the specialist that was escorting me.

27.     Together, the specialists (4) half dragged and half
carried me to the steps of the bus. There they literally threw me
off the bus.  I suffered from head injuries caused by contact with
the legs of the seats and the steps.

28.   Sanford immediately appealed to the Wabash officials to take
me back.  Also, he wanted the officials to support him. But the
officials, in particular, Captain Waters did not want to get
involved. He radioed for a nurse to check me out. The nurse came
and cleaned my injuries [washed blood from my face and head] Also,
the nurse checked my vitals.

29.     For awhile, there was a stalemate between the TranCor
Specialists and the Wabash officials. Finally, the officials

[6 of 11]

threatened to call the Indiana State Police to have the special-
ists removed from state property. It was only then that the
specialist gathered me up and carried me back on the bus. But only
after Sanford insistence that I was not hurt. To illustrate his
point, Sanford stuck a finger under my nose and pushed backward
and upward.

30.      Initially, the TransCor specialists did not want me to
have my legal papers. I had accumulated 4 large boxes and 5 large
garbage bags during my incarceration in the IDOC. They complained
that I had too many to carry them on the bus.

31.      Additionally, I had medications, i.e., (1) prozac,
(2) doxepin, (3) ecotrin, [4] zantac, [5] ibuprohen, [6] steroids,
[7] multiple vitamins. These medications were given to the
specialists.

32.      During the trip to Hopkinsville, Kentucky, we stopped in
Metropolis, Illinois and a couple other places. However, I was not
permitted to use the rest room. Consequently, I urinated on myself
several times. Also, I was put into a cage with the windows out.
I was cold but I was not given a blanket.  Although, the other
prisoners had blankets. Their windows were closed.

33.      When we arrived in Hopkinsville, all of the prisoners were
taken off the bus and turned over to officials at the Christian
County Jail. However, I was isolated from the other prisoners. I
was not permitted to shower, write letters of make phone calls.
Even though other prisoners were given privileges.

34.      Evidently, TransCor had radioed ahead because as soon as
I was escorted off the bus, I was confronted by defendants Ed
Campbell and Chris Diedrich. I was taken in a room off camera and

[7 of 11]

told that if they had any trouble from me that I would suffer
the consequences. When I tried to explain that it was the special-
ists at fault, I was immediately taken to the ground [floor]. I
then dragged and carried to a isolated cell. I was naked.

35.     At no time was I given written reasons for being segregat-
ed from other prisoners. Nor did I meet a disciplinary board.

36.  On Sunday, at approximately 10:00 p.m., I was awakened by
two jail officials. I was ordered to turn my back so I could be
handcuffed. This was done before I was escorted from the cell.
Each officer held me under my arm pits. However, I loss my balance
and fell.

37.     The jailers seized the opportunity to drag me down the
hallway. I was taken in a room off camera and tasered several times.
The handcuffs were removed from behind my back and placed in front.
Shackles were placed on my ankles. Each jailer held my limbs. I
was carried on the bus in this manner. Every so often, one of the
jailers would taser me.

38.     After the defendants, e.g., Sergeant Matt Deluga, Mike
Grise, Kyle Bruce, Adam Turner, and Brian Glover got me on the
transportation bus, defendant Stephanie White gave orders for the
jailers to return me to jail. Again, I was tasered.

39.     Either late Sunday night or early Monday morning, I was
awakened and told that I was being transferred. Again, I went
through the process of strip searched, handcuffed and shackled.

40.     At the break of dawn, I was committed at the Roederer
Correctional Complex [RCC]. Pictures were taken of my injuries
and I was given a hair cut and shower. A bed was assigned to me.

41.     Later that day, I was placed in Administrative Segregation per defendants Ed Puckett and Jessica Durrett. The reason for the prehearing detention was supposedly due to me physically assaulting TransCor staff. However, I did not receive a copy of report from TransCor alleging that I had assaulted them. In any event, I served four (4) days in segregation.

42.     During my stay in seg, I was not given a misconduct report or disciplinary hearing. Also, I was not allowed to shower or mingle with other prisoners. I did not receive any of my medications.

43.     The prozac was prescribed by Dr. Phillip Creps, Psychiatrist. The medications were at one time in the possession of Nurse Lisa. In point of fact, the last time that I received the prozac was when Lisa gave me dosages.

44.     On several occasions, I asked Nurse Lisa what had she done with the prozac and other medicines. Her response was: "I do not know what happened to them."

45.     Corrections Policies and Procedures require that all psychopic drugs are to be continued until a prisoner is examined a psychiatrist.

46.     In response to Grievance No. 06-239, Captain Phil Brierly stated that my grievance/complaint was with the Christian County Jail and/or TransCor. He concluded that the KDOC had no control over the Christain County Jail or TransCor. However, Captain Brierly is somewhat misleading in that, I served 4 days in seg based on reports from the Christian County Jail. There are no reports from TransCor. TransCor merely made oral allegations.

[9 of 11]

47.      In other words, TransCor's verbal accusations were above reproach. I had no way of defending against the allegations. However Captain Brierly did assure me that the Kentucky State Police would be notified of the incident. I have yet to talk with the police.

48.      WHEREFORE, I pray that the court will grant judgments as follows:

(a).   Grant monetary damages of compensatory and punitive nature.

1.   Compensatory damages of thirty-thousand ($30,000) dollars from each defendant;

2.   Punitive damages of three hundred-thousand ($300,000) dollars from each defendant.

(b).   Issue a preliminary injunction and/or temporary restraining order and/or premanent injunction prohibiting and enjoining the Transportation Corporation of America to cease and desist from transporting prisoners in the State of Indiana and the Commonwealth of Kentucky.

(c).   Revoke and/or suspend the licenses and permits allowing employees of the Transportation of America from possessing and using deadly weapons, tasers and chemical sprays in the State of Indiana and the Commonwealth of Kentucky.

(d).   Declare all acts, actions, conduct and behavior alleged in this civil rights lawsuit illegal, unlawful in violation of the First, Fourth, Fifth, Sixth, Eighth, Thirteenth and Fourteenth Amendments to the Constitution of the United States.

(e).   Conduct a jury trial as guaranteed by the Seventh Amendment to the United States Constitution.

(f).   Appoint an attorney for the specific purpose of obtaining discoverable materials in the possession and control of the defendants.

*James Carl Higgs*

James Carl Higgs, Plaintiff

[10 of 11]

## CERTIFICATION

I, James Carl Higgs, plaintiff herein, certify under Oath and the penalty of perjury that a copy of the foregoing was mailed First Class prepaid postage container to the defendants, Christian County Jail, 410 West 7th Street, Hopkinsville, Kentucky 42240, Transportation Corporation of America, 1715 Yankee Doodle Road, Eagan, Minnesota, 55121, on this 23rd day of February 2007.

James Carl Higgs #084908
EKCC
Road To Justice
West Liberty, Kentucky 41472

Subscribed and sworn to before me
a Notary Public on this 23 day of
February 2007.

Notary Public: 

My Commission Expires: 3-18-09

[11 of 11]



≡ 0.63

U.S. POSTAGE

PB METER
7050211

FEB 23 07

KY

2-23-2007

Inmate Mail

Not Responsible for Content

NOT RESPONSIBLE FOR CONTENT

James Carl Higgs #084908
Eastern Kentucky Correctional Complex
200 Road To Justice
West Liberty, KY 41472

United States District Court
116 Gene Snyder U.S. Courthouse
601 West Broadway
Louisville, KY 40202

E K C C
FEB 23 2007
LEGAL MAIL

40202%2236 C002